24 C.C.P.A.(Customs)

## UNION FORK & HOE CO. v. UNITED STATES.

### Customs Appeal No. 3974.

Court of Customs and Patent Appeals.
Nov. 9, 1936.

Pickrell & McDonald, of New York City, for appellant.

Joseph R. Jackson, Asst. Atty. Gen. (Charles D. Lawrence, Sp. Asst. to Atty. Gen., and Ralph Folks, Sp. Atty., of New York City, of counsel), for the United States.

James W. Bevans, of New York City, for party in interest.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

On June 18, 1930, Senate Resolution No. 295 was adopted by the Senate. It was as follows:

"Resolved, That the Tariff Commission is hereby directed to investigate the differences in the cost of production between the domestic article and foreign article and to report upon the earliest date practicable upon the following articles: Shoes, both men's and women's shoes; furniture; bells; wire fencing; wire netting; cement; hose; shovels; spades; scoops; forks; rakes; scythes; sickles; grass hooks; corn knives; and drainage tools.

"This request is made under and by virtue of section 336, and the following sections, of the new Tariff Act, passed and approved on the 17th day of June, 1930. (Congressional Record, 71st Congress, 2nd Session, Vol. 72, Pt. 10, p. 11074.)"

Pursuant to this resolution, the United States Tariff Commission undertook an investigation of the subject-matter contained in said resolution. On April 8, 1931, the commission extended the scope of the investigation to include hay forks and manure forks. After a report to the President on December 14, 1932, the President referred the matter back to the commission, with the request that it review the subject in view of the shifting situation, especially of depreciated currencies and principal competitive country. The commission made a supplemental report on February 24, 1933, and on April 3, 1933, the President made a Proclamation (No. 2044, 48 Stat. 1694), by virtue of which proclamation he ordered a decrease in the rate of duty expressly fixed in paragraph 373 of section 1 of title 1 of said Tariff Act of 1930 (19 U.S.C.A. § 1001, par. 373), "on forks, hose, and rakes, all the foregoing if agricultural hand tools, and parts thereof, composed wholly or in chief value of metal, whether partly or wholly manufactured, from 30 per centum ad valorem to 15 per centum ad valorem"; and also a decrease in duty in the following articles:

"A decrease in the rates of duty expressly fixed in paragraph 355 of Title I of said act on hay forks and 4-tined manure forks, all the foregoing, finished or unfinished, not specially provided for, with handles of any material other than those specifically mentioned in paragraph 355, if 4 inches in length or over, exclusive of handle, from 8 cents each and 45 per centum ad valorem to 4 cents each and 22–½ per centum ad valorem; and

"A decrease in the rates of duty expressly fixed in paragraph 355 of Title I of said act on hay forks and 4-tined manure forks, finished or unfinished, not specially provided for, any of the foregoing without handles, with blades 6 inches or more in length, from 8 cents each and 45 per centum ad valorem to 4 cents each and 22–½ per centum ad valorem."

Thereafter, the appellant, an American producer, initiated proceedings under section 516 of said Tariff Act (19 U.S.C.A. § 1516), and as a result of such proceedings filed a protest against the classification by the collector at the port of New York of certain goods imported by the International Fork & Hoe Company, the party in interest herein. This protest included the classification of "3-tine hay forkheads and 4-tine manure forkheads," classified under paragraph 355 of section 1 of said act (19 U.S. C.A. § 1001, par. 355), and the classification under paragraph 373 of section 1 of said act of certain "5-Tine Manure Forkheads, 6-Tine Manure Forkheads, and 4-Tine Spading Forkheads, Light Tumbled," all of which had been classified under the rates provided by the President's Proclamation heretofore mentioned, and which had been promulgated and published as T. D. 46307, 63 Treas. Dec. 616.

The goods imported here are described by the collector as "hay-fork heads and 4-tined manure forks heads assessed at 4¢ each and 22½% under paragraph 355, § 1, act of 1930; also manure-fork heads 5 and 6-tined and 4-tined spading fork-heads, light tumbled."

On the trial, counsel for the protestant abandoned its claim that section 336 of said Tariff Act (19 U.S.C.A. § 1336) is unconstitutional as an unlawful delegation of legislative authority, conceding that under the announcement of this court in Feltex Corp. v. Dutchess Hat Works, 71 F.(2d) 322, 21 C.C.P.A.(Customs) 463, T.D. 46957, that claim was not tenable. The claim, however, was made by counsel that the report made by the United States Tariff Commission to the President did not comply with the terms of the statute. Furthermore, that the commission " * * * went over to Germany and they hunted up some manufacturer who had never exported any of this merchandise to the United States, and

they obtained from him cost of production figures of what the statute requires to be *the* competing article. The report on its face shows that. In addition to that, we will call to the Court's attention in our brief a few facts which appear upon the face of the report itself, which shows the great inaccuracies of this report. For instance, I will mention in passing that on page 13 of the report, Table 5 of the report, it shows the cost of producing first quality spading forks was approximately $3.92 per dozen, whereas the cost of production of third quality was $4.15. In other words, it cost more to produce an inferior article. And on the same page, Table 6, it occurs that a hay fork, which anybody knows has about three tines, cost more than a manure fork, which anybody knows has from four to five tines."

Following this, counsel for the protestant requested that the case be transferred to the "next Washington docket" for the purpose of taking the testimony of the members of the Tariff Commission who had submitted the original report to President Hoover in February, 1933. Counsel stated that it was proposed to call the members of the commission to the witness stand and to ask each of them whether any additional information had been submitted to the President, except that which was contained in the formal report. This, it was said, was for the purpose of showing what the commission actually did, and for the purpose of ascertaining whether a proper investigation was made.

The United States Customs Court took this matter under advisement, and on January 11, 1935, delivered an interlocutory decision, denying the motion to transfer the case to the Washington docket. Thereafter, the cause proceeded, the testimony of some witnesses was taken, and the matter finally submitted to the court which, on November 19, 1935, rendered judgment overruling the protest. The protestant has appealed.

Counsel for the appellant thus states the issues:

"1. Does the Report of the Tariff Commission on its face show a sufficient compliance with the requirements of section 336.

"2. If the Report of the Tariff Commission does not show on its face a sufficient compliance with section 336, is it permissible to make the following inquiries of the members of the Tariff Commission and certain of its employees:

"(a) Whether any member of the Tariff Commission or any employee thereof, transmitted to the President of the United States any information other than that contained in Report No. 66 (Exhibit 9).

"(b) Whether the Tariff Commission obtained the average foreign wholesale selling price for a representative period of like or similar competitive imported articles.

"(c) Whether the cost figures obtained by the Tariff Commission covered "shank type" forks, such as Illustrative Exhibits A and B, the kind imported, or the "loop socket type" fork, such as Illustrative Exhibit D for Identification, which is entirely dissimilar from the type used in the United States."

It is argued by counsel for the appellant that the court erred in refusing to allow its motion to transfer this case "to the next Washington docket for the purpose of taking the testimony of the Tariff Commission and members of its staff." This motion was addressed to the trial division. There is no showing in the record that any application was made to the presiding judge of the United States Customs Court for such transfer. A similar question arose in United States v. Enrique Vidal Sanchez, 15 Cust.App. 443, T.D. 42642. We there held that under the rules of the United States Customs Court such applications should be made to the president of the Board, now the presiding judge of the United States Customs Court, and held that before error might be assigned upon the refusal to grant such a transfer, it must be shown that application had been made to the said presiding judge for such a hearing, and be denied by him. It is true that the cited case was an appraisement matter, but it is not seen wherein the underlying principles are different.

To the same effect was our decision in C. J. Tower & Sons v. United States, 71 F.(2d) 438, 21 C.C.P.A.(Customs) 417, T.D. 46943, which case was under the Anti-Dumping Act 1921 (42 Stat. 11 [19 U.S.C.A. § 160 et seq.]). On the strength of these authorities, it would seem that the appellant is not in position to allege error because of the refusal to allow such motion.

Following the denial of the motion to transfer the cause, counsel for appellant moved to take, de bene esse, certain testimony, as is shown in the following motion: "Now, if it may please the court, I move that we may be authorized, under authority of this court, to take the testimony of Hon. Robert L. O'Brien, Hon. Thomas

Walker Page, Hon. Edgar B. Brossard, Hon. John Lee Coulter, Hon. Ira M. Ornburn, and Hon. Charles R. Crisp. I move to take this testimony de bene esse. The reason for making this offer is that in the event any of these witnesses died we might have our rights seriously prejudiced, because we would then be unable to prove that the one who died did not furnish to the President additional information outside of report 66. As I understand taking testimony de bene esse, it is for the purpose of perpetuating peoples testimony who might die during the litigation, as not part of the record."

There was no further showing as to this motion, and the particular information which was sought to be adduced from these witnesses, or the substance of what their testimony was expected to be, was not given. It is true that in the record counsel for the appellant stated, in a general way, that they expected to ask these commissioners as to what information, in addition to the matters contained in the report of the commission, they had given to the President.

Strictly speaking, we are of the opinion that the motion was informal and did not comply with the rule announced by us in United States v. Enrique Vidal Sanchez, supra, in which we said, speaking of a motion to transfer for the purpose of taking testimony: "This motion was denied by the single justice. In making this motion, no showing was made by the Government as to what witnesses were available at Porto Rico, or as to the evidence which it was hoped or expected to obtain from them. It is practically the universal practice to require such a showing. United States v. Schoonmaker et al. [C.C.] 93 F. 724. Also, plainly, if the motion may be considered in the same category as a motion for continuance, its allowance was discretionary with the trial court, and, as we believe no abuse of discretion is shown, a refusal to allow it is not error."

It will be observed that the motion was to take the testimony of these witnesses de bene esse, and not as depositions for use on the trial of this cause. We are of opinion that the allowance of such a motion was discretionary, and, unless we can see some abuse of this discretion, the action of the court in denying the same will not be disturbed. It remains to be determined whether any such abuse of discretion is shown.

It is contended that the appellant had a right to examine said commissioners and to obtain from each of them information as to what communications they had made to the President, aside from the written report, and as to the extent of the investigation of the cost of production of competing articles manufactured in the principal competing country. The alleged object of such interrogations was to attempt to show that, as a matter of fact, the Tariff Commission did not investigate the cost of production of articles which were like or similar to the domestic product. It is also argued that the investigation in the foreign competing country was not of comparable goods with those which were produced in the United States, and that, therefore, the report of the Tariff Commission to the President did not comply with the law which required an examination of like or similar competing articles. In connection with this, it is argued that the examination of the Tariff Commission was confined to articles produced abroad, the cost of production of which was much less than the cost of production of the American competing articles.

The principal contention made by counsel for appellant is that the investigation made by the United States Tariff Commission, in this case, was not sufficient to authorize the President under said section 336 to make a valid proclamation changing the rates applicable to the imported goods here in question, and that, as a consequence, the proclamation was invalid. The record shows that on November 30, 1932, the United States Tariff Commission transmitted to the President its report in which it purported to disclose its findings as to the matters contained in said Senate Resolution, No. 295, namely, an investigation as to the difference in cost of production of shovels, spades, scoops, forks, hoes, rakes, scythes, sickles, grass hooks, corn knives, and drainage tools, and hay forks and manure forks in the United States and in the principal competing country. This report shows that proper notice was given to the appellant, and an opportunity given to appear at such investigation and be heard, and to produce evidence. No denial is made of the giving of such notice, and the holding of such hearing. The findings of the Tariff Commission disclose that the twelve month period ending June 30, 1930, was taken as a representative period for the purpose of the investigation, and that the commission found Germany to be the principal competing country. It also made the following specific finding: "(e) The German implements of

this group are like or similar to the domestic products. From the tools for which costs were obtained in the United States, six samples were selected which if imported would be dutiable under paragraph 373 and two which would be dutiable under paragraph 355. Costs of similar samples were obtained from one representative firm in Germany. The cost differences for these selected samples are representative of the cost differences for all articles of this group."

Following this, in its conclusions, the commission found that the existing rates of duty were more than were necessary to equalize differences in cost of production, and recommended decreases as were afterwards made in the proclamation of the President. In the summary of information obtained in the investigation the commission stated: "In the implements included in this investigation there are many variations in design, size, weight, quality, and finish, resulting in thousands of distinct types. Most of the tools are made in at least three standard grades. A thorough survey was made of the entire field, and selection made of the minimum number of samples for cost purposes, which it appeared would adequately represent the industry. Costs were obtained for about 190 sample tools, with a number of handles in addition."

The report also shows in considerable detail the results of the information gathered as to the manufacture of hay forks and manure forks, and as to the condition of that industry in Germany and Sweden. While the report shows that the articles for which foreign costs were ascertained were one hay fork, three styles of spading fork, one bow rake, and four styles of hoe, it appears further that, "These articles fairly represent the entire line of this class of tools," and tables are given as to this entire field of industry.

The evidence taken by the commission is not attached to the report.

We shall consider the issues as they are stated by counsel for appellant.

The first point is stated: "Does the Report of the Tariff Commission on its face show a sufficient compliance with the requirements of section 336?"

In addition to the hereinbefore quoted portions of the report and findings of the commission, it is stated:

"To the President:

"The United States Tariff Commission herein reports the results of an investiga-tion of the differences in costs of production of shovels, spades, scoops, forks, hoes, rakes, scythes, sickles, grass hooks, corn knives, and drainage tools (par. 373), and hay forks and manure forks (par. 355), in the United States and in the principal competing country, for the purposes of section 336 of title III of the Tariff Act of 1930, and its findings with respect thereto."

 Thus, according to this report, the commission made an investigation, under said section 336, of the costs of production of the articles named in said Senate Resolution No. 295, and of the class of articles involved here. It is argued, however, that this investigation was not comprehensive enough; that it did not take into account the differences in type and cost of manufacture of the foreign articles and those of domestic production; and that, therefore, it was not such an inquiry as the law contemplates and requires. The law requires an investigation, and, without one, the President cannot act. Hampton, Jr., & Co. v. United States, 14 Cust.App. 350, T.D. 42030, affirmed in J. W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 48 S.Ct. 348, 72 L.Ed. 624.

An investigation is a prerequisite to the issuance of a proclamation by the President. William A. Foster & Co. v. United States, 20 C.C.P.A.(Customs) 15, T.D. 45673. However, when it is once established that such an investigation has been had, it is not within the power of this court to go behind the report and findings of the commission and to determine whether, in fact, the proceedings of the commission, and the evidence heard before it, was sufficient to justify the findings and conclusions arrived at.

We do not sit as a court to review the record made before the Tariff Commission. "When a judicial review was thought necessary the Congress provided for it, as in section 316 of the Tariff Act of 1922. Not having provided directly for such a review, it was certainly not the intent of the lawmakers that we should so review such hearings, collaterally and indirectly." William A. Foster & Co. v. U. S., supra, citing Norwegian Nitrogen Products Co. v. United States, 20 C.C.P.A.(Customs) 27, T.D. 45674, and United States v. Fox River Butter Co., 20 C.C.P.A.(Customs) 38, T.D. 45675.

It is argued by counsel for the appellant that but one German manufacturer's products were investigated, and that all of the

articles in question were not specifically investigated. However, the report does state, as indicated by the hereinbefore quoted excerpts, that, while six samples were selected which would be dutiable under paragraph 373, and two which would be dutiable under paragraph 355, "The cost differences for these selected samples are representative of the cost differences for all articles of this group." Again it is stated that while there are many variations in design, size, quality, etc., that, "A thorough survey was made of the entire field, and selection made of the minimum number of samples for cost purposes, which it appeared would adequately represent the industry," and that, "Costs, were obtained for about 190 sample tools, with a number of handles in addition."

■ The weight of this report was a matter for the consideration of the President. We have neither the inclination nor the right to review the same for the purpose of ascertaining whether the findings of the commission were correct. It is sufficient for us to say that it does appear affirmatively, from the report of said commission and its findings, that an investigation was made of the differences in cost of production of the articles of the class or type of the imported articles and like or similar domestic articles, and that a public hearing was had and an ample opportunity afforded the appellant to be present and to be heard at such hearing.

Much reliance has been placed by counsel for appellant upon our recent case of Carl Zeiss, Inc. v. United States, 76 F.(2d) 412, 23 C.C.P.A.(Customs) 7, T.D. 47654. In that case we held a proclamation issued by the President under said section 336 to be invalid, because of a failure of the commission to give proper notice to parties interested of the subject-matter of the investigation upon which the proclamation was based. Clearly, in that case, the parties interested had no notice of an inquiry which was made by the commission on its own volition, and as a result of which additional rates of duty were imposed upon certain imported products. But no such complaint is made here. The appellant does not deny the receipt by it of proper notice. Its only complaint is that the investigation did not go far enough to properly show the differences of cost of production between the imported product and like or similar domestic products.

It is also contended that the domestic products which were the measure of the differences of cost of production were not like or similar to the imported products. To substantiate this contention, certain witnesses were called by the protestant and examined for the purpose of proving, if possible, that the domestic articles were of a different type than the imported articles; that their processes of manufacture were different, and the cost of production much greater; for instance, that the imported products were of the loop socket type rather than the shank type which is typical of the domestic product which was used for purposes of comparison. However, the report shows that the commission investigated "all type of forks," and that the samples which it selected were typical of all such goods. The report further shows that many samples of various types of goods were examined, which were typical of all that class of articles. It thus appears that even though it may be said that the samples which were before the commission and were selected by it, did not embrace samples of all of the imported goods, they were typical and fairly represented the cost of production.

If it were given to this court to decide whether, in the case at bar, as a matter of fact, the commission came to the right conclusion on this point, the court might give its views as to whether or not such articles were like or similar. The facts shown by the investigation, however, were for the President to pass upon, and are not a matter for the consideration of this court.

■ It is contended that appellant should have been afforded the opportunity to take the testimony de bene esse of the members of the Tariff Commission for the purpose of showing whether any other information was conveyed by the commission to the President, except that stated in the report and findings. Aside from the suggestions we have hereinbefore made as to the propriety of said motion, it may be said that it is the view of the court that appellant was properly denied this opportunity. The members of the commission, if called to the witness stand, might properly have refused to reply to such interrogatories, and to give to appellant the information desired. Norwegian Nitrogen Products Co. v. United States, supra, affirmed in 288 U.S. 294, 53 S.Ct. 350, 77 L.Ed. 796.

The communications which the individual members of the United States Tariff Com-

mission may make, or fail to make, to the President, aside from the report and findings of the commission as specified by law, are not matters of public record, and, in our opinion, are not subject to investigation by this court.

Finally, it is contended that the commission did not obtain an "average foreign wholesale selling price for a representative period of like or similar competitive imported articles." As we view it, this also raises a question as to the weight, not the legality, of the investigation of the commission. In such cases, the rule is as stated in our decision in William A. Foster & Co., Inc., et al. v. United States, supra, where we said: "It is also argued that some members of the commission computed their differences by reference to years not proper measures of such differences. These are all matters which affect the weight, not the legality, of the investigation by the commission." It is true this case was decided under the Tariff Act of 1922 (42 Stat. 858), under section 315 of that act, and it is also true that under that section the President might supplement the report of the Tariff Commission by other extraneous facts elsewhere obtained, and that such is not the case under section 336 of the Tariff Act of 1930. The controlling principle, however, in both cases, is the same, so far as the effect of the period for which costs are obtained is concerned. See, also, Feltex Corp. v. Dutchess Hat Works, supra.

Finding no error in the judgment of the United States Customs Court, it is affirmed.

Affirmed.